Mark Mausert
NV Bar No. 2398
Cody Oldham
NV Bar No. 14594
930 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MAUREEN MCKISSICK & DEANNA GESCHEIDER,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF RENO AND DOES I-X,<br><br>Defendants | Case No.: 3:17-CV-0458-MMD-VPC<br><br>**PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE** |

COMES NOW Plaintiffs, Maureen McKissick and Deanna Gescheider, by and through their attorneys, and reply to the Defendant's Opposition to Plaintiff's Motion to Recuse the Reno City Attorneys' Office. This Reply is supported by the pleadings on file herein and by the accompanying points and authorities, and accompanying exhibits.[1]

<u>ARGUMENT</u>

**I. OPPOSING COUNSEL CORRECTLY CITES ATTORNEY DISQUALIFICATION IS A MATTER OF STATE LAW BUT IGNORES PRECEDENT OF THE SUPREME COURT OF NEVADA.**

---

[1] Mr. Mausert was functioning on the old thirty (30) page limit and would like to express his sincerest apologies to the Court. He will never do it again.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 1

Federal courts are tasked with applying state law in determining matters of disqualification and *must follow the reasoned view of the state supreme court* when it has spoken on the issue. *In re County of Los Angeles v. U.S. Dist. Ct.*, 223 F.3d 990, 995 (9th Cir. 2000) (emphasis added). Disqualification of a prosecutor's office rests with the sound discretion of the district court. *State v. Eighth Dist. Ct. (Zogheib)*, 321 P.3d 882, 884, 13 Nev. Adv. Op. 18 (Nev. 2014). In a baffling manner, opposing counsel cites to this proposition shortly before illustrating the law in Washington and Arizona. Perhaps this would be a persuasive tactic if Nevada did not have case law of its own on the matter, which opposing counsel acknowledges, i.e., the citation to *Liapis v. Dist. Ct.*—stating Nevada's standard—in his brief.

The Supreme Court of Nevada ruled, "rather, this court has recognized that an appearance of impropriety may form a basis for attorney disqualification only in the limited circumstance of a public lawyer, and only if the appearance of impropriety is so extreme as to undermine public trust and confidence in the judicial system." *Liapis v. Dist. Ct.* 128 Nev. Adv. Op. 39, 282 P.3d 733, 737 (Nev. 2012). Outlined in the original motion is a myriad of reasons as to why Karl Hall's (hereinafter "Hall") conduct has been so extreme as to undermine the public trust, nineteen of them.[2] Hall being an elected official presents a fact pattern so unique judicial discretion is the only remedy capable of providing just adjudication on the merits; this notion rings just as true for the

---

[2] Including Hall's knowledge of Andrew Clinger's numerous felonies of destroying evidence and failing to investigate his conduct.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 2

City of Reno as it does the Plaintiffs.[3] Instead of denying contentions of Hall's flagrant misconduct, opposing counsel hides behind the burden of the moving party, a burden if we have not met -- will never be able to meet. Thus, opposing counsel has taken the position of adopting Hall's conduct and asks the court to do nothing because of the proverbial "boogey-man" of potential abuse. In other words, ignore perpetual abuse for fear of potential abuse.

## II. STANDING UNDER RULE 1.7 DOES NOT REQUIRE A FORMER OR CURRENT CLIENT.

Under the relevant portion of Rule 1.7 of the Nevada Rules of Professional Conduct:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client *or a third person or by a personal interest of the lawyer.*

(Emphasis added). Opposing counsel misstates the rule by stating, "Rule 1.7 addresses conflicts of interest which occur in the representation of concurrent clients." *See* Response to Motion to Recuse, pg. 3, lines 9-10. The Rule—in its plain reading—addresses a conflict of interest of *current clients*, not concurrent clients. A reading of the rule in the way opposing counsel contends would unduly restrict Rule 1.7 to the point of becoming fruitless and handicapping the Rule solely to its application of (a)(1).[4]

---

[3] Unlike most attorney-client situations, the City of Reno is not free to fire Hall whenever it pleases. Firing Hall would require a super-majority vote (six (6) out of seven (7)) City Council Members. The same City Council Members Hall has apprised of material facts.

[4] The "or" conjunction is used to separate (a)(1) and (a)(2) further demonstrates the intent of the drafters to not read the rule in the way opposing counsel is attempting to frame it.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 3

The Supreme Court of Nevada has declared one does not necessarily have to be a client to bring a motion to disqualify an attorney. Opposing counsel cited *Liapis*.

> However, some courts have permitted nonclients to bring a motion to disqualify an attorney in limited circumstances. First, if the breach of ethics "so infects the litigation in which disqualification is sought that it impacts the [nonclient] moving party's interest in a just and lawful determination of her claims, she may have the…standing needed to bring a motion to disqualify based on a third-party conflict of interest of other ethical violation."

*Liapis*, 282 P.3d at 737; *citing Colyer v. Smith*, 50 F.Supp.2d 966, 971-72 (C.D. Cal. 1999) (discussing prudential, as well as constitutional, standing). Hall, by acting as if Clinger was his client instead of the City, created this case. Hall has evidenced an intent to stay on the same road. His goal is to justify his misconduct, as opposed to properly representing the City.

Standing can additionally be obtained from a breach of confidentiality:

> Next, "[s]tanding [can] arise[] from a breach of the duty of confidentiality owed to the complaining party, *regardless of whether a lawyer-client relationship existed.* (citation omitted). However, "a lawyer owes no general duty of confidentiality to nonclients." (citation omitted). "Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information.

*Liapis*, 282 P.3d at 738 (emphasis added). Obviously there is no lawyer-client relationship between the Plaintiffs and Hall. The Supreme Court, however, has acknowledged under Nevada law there is no such requirement a party must be a current or past client of an attorney to have the requisite standing to bring a motion to disqualify an attorney.

Not only do the Plaintiffs possess the requisite standing—but—as an Officer of the Court, there is an obligation to bring such egregious misconduct to the Court's attention. This Court also possesses an inherent power to ensure just and fair adjudication under Rule 1. Fair adjudication is no longer a possibility in this case as long as Hall or the City Attorney's Office is allowed to

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 4

continue treating this case as a baseless "witch hunt."[5] Hall's toxic mischaracterization of this case infected other employees of the City, as evidenced by Acting City Manager Bill Thomas's comment, "they'll have to come [back to the office] sometime and they'll just have to toughen up." Declaration of Kelly Leerman, pg. 4, ¶ 11.

### III. ENSURING PROFESSIONAL REPRESENTATION AND A JUST RESOLUTION BASED ON THE MERITS IS NOT AN UNFAIR TACTICAL ADVANTAGE AND SHOULD BE EXPECTED IN ALL LITIGATION.

The position opposing counsel takes is a perplexing one, i.e., the Court should ignore egregious misconduct because of the potential of a settlement agreement.[6] As opposing counsel has stated, it is the Plaintiffs' position the Reno City Attorney's Office will litigate this case with an ulterior motive, a tactic Hall and the City Attorney's Office have indulged in by scheduling a bogus settlement conference designed to intimidate. Admittedly, by recusing the City Attorney's Office, the plaintiffs will receive a benefit, as is the case for every granted motion; however, in a unique twist, the City will also receive a benefit, being the City will be able to hire a law firm with attorneys trained in Title VII law, who have not compromised their ability to properly represent the City. The benefit Plaintiffs seek is legitimate–they will not be reduced to wasting time dealing with a City Attorney more intent on covering up misconduct, as opposed to litigating on the merits.

The Plaintiffs' motivation is solely to have a fair and just resolution on the merits. Thus far, through the conduct of Hall and the City Attorney's office, there has been no demonstration of fair

---

[5] Hall's own words documented in the Wall Report. This demonstrates Hall's inability to separate his personal opinion from his capacity as the representative of the City.
[6] Settlement is not only an acceptable resolution in the eyes of the court, it is encouraged.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 5

dealing. In no way, shape, or form is asking for a good faith settlement agreement an "unethical and improper use of a motion for disqualification." Quite the opposite, a motion for disqualification, although rare, is intended to cleanse the case of inappropriate conduct when it "so infects the litigation," [7] i.e., precisely how the Plaintiffs are using this motion.

Absent is any meaningful repudiation of the allegations. Allegations of this magnitude are devastating, yet, instead of vehemently denying them, opposing counsel seeks to integrate scare tactics on why this Court should rule in opposition of the motion. Most of these rules cited are broad generalities, stated by the courts, being interjected into a case of a unique posture. No illigitimate tactical advantage is being sought, but rather reasoned litigation on the merits, as opposed to litigation for the purpose of justifying misconduct. It is possible, even with such a misplaced focus, a just result may be achieved, through inadvertence, notwithstanding further misconduct of the same ilk as the bogus settlement conference. Recusal will render such a result more likely. Recusal will definitely forster more efficient litigation.

**IV. THE DECLARATIONS ARE GROUNDED IN PERSONAL KNOWLEDGE, THEREFORE, THEY ARE NOT HEARSAY UNDER THE RULE.**

The notion the Plaintiffs have failed to establish identifiable impropriety is unsound; however, not surprising, denying and trivializing has been the City's position from the start. Located within the first three pages of the Motion to Recuse is a list of nineteen (19) incidents of misconduct/malpractice. In addition to the incidents not being repudiated, four (4) declarations, including one of two attached to this reply, have been submitted, all with *first-hand knowledge* of

---

[7] *See Liapis*, 282 P.3d at 737.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 6

Hall's misconduct. Additionally, the Wall Report (Plaintiffs' Exhibit 1), also outlines instances of misconduct by Hall. The low standard of "reasonable possibility" no doubt has been overwhelmingly met with five (5) different documents/witnesses outlining some form of misconduct on the part of Hall.

Again, opposing counsel cites to *Liapis* but fails to properly apply the case.

> Here, Marie alleges simply that Mark's love for his parents impacts his ability to represent *Theodore*, not Marie. In this, Marie does not argue that Mark's representation of Theodore constitutes an ethical breach as to her or impacts any of her legal interests. Thus, Marie has failed to establish that some "specifically identifiable impropriety" occurred, (citations omitted) and "[s]peculative contentions of conflict of interest cannot justify disqualification of counsel.

282 P.3d at 737. Obviously, five (5) documents/witnesses rise above the level of speculative, so the argument presented by opposing counsel is unpersuasive. Additionally, the Plaintiffs have argued the representation of the City constitutes an ethical breach *and* impacts their legal interest of fair litigation. Thus, *Liapis* does not provide solace for the City Attorney's Office—but instead favors disqualification.

## V. CITY OF RENO POLICY NUMBER 607 DID NOT ALLOW HALL TO LEAK THE IDENTITY OF A SEXUAL HARASSMENT COMPLAINANT.

The relevant portion of the Harassment and Retaliation Policy reads:

> Upon conclusion of the meeting with the employee who filed the complaint, the *Human Resource Director* shall contact the person(s) accused. The purpose of this contact is to notify the accused person of the *complaint*.

Section VII (B)(8) (emphasis added). Opposing counsel acknowledges in his response Hall did, in fact, inform Andrew Clinger (hereinafter "Clinger") Brianna Wolf made the allegations against Clinger. The plain reading of the rule establishes Hall violated procedure -- being he is not the Human Resource Director mandated to make contact with the accused.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 7

Further, opposing counsel states because the Human Resource Director works directly with the City Attorney's Office, Hall could tell Clinger as part of the investigation. However, the Director Human Resources at the time, Kelly Leerman, was not consulted in this decision and felt Hall violated procedure by telling Clinger Ms. Wolf complained:

> We made a list of which persons were going to be informed of the allegation and in which order these persons were to be informed. We planned on conferring first with the Mayor, for the purpose, in part, of deciding how Mr. Clinger was to be informed. *After we had this meeting*, Mr. Hall came to my office and informed me he had just informed Mr. Clinger an investigation had been commenced against him and Ms. Wolf was the claimant. I asked Mr. Hall why he revealed the identity of Ms. Wolf. Mr. Hall replied that because Mr. Clinger and Ms. Wolf worked in close proximity, he wished to ensure Mr. Clinger did not behave differently towards Ms. Wolf. *In my professional opinion, the dissemination of the identity of the complainant at this stage was a bad idea*. I thought this was a bad idea because neither Mr. Hall nor myself knew, at this time, if there was validity to Ms. Wolf's statements. By informing Mr. Clinger at this very early stage of the identity of the complainant, *we effectively breached confidentiality*. I had promised Ms. Wolf her identity would be kept confidential as long as possible.

Declaration of Kelly Leerman, pg. 2-3 ¶ 5 (emphasis added). Hall knew he was not supposed to inform Clinger of the allegations until after the Mayor had been consulted. However, on his own accord, Hall acted as though his client was Clinger instead of the City and informed Clinger anyway. Leerman's declaration provides more evidence of Hall's misconduct. Hall's consciousness of guilt is memorialized in Judge Wall's Report. Incredibly, Hall claimed he could not remember if he disclosed Ms. Wolf's identity. *See* Wall's Report, unredacted pg. 47.

**VI. HALL OBSTRUCTED THE SECOND INVESTIGATION BECAUSE HE REFUSED TO STIPULATE AGAINST USING THE PLAINTIFFS' TESTIMONY AS IMPEACHMENT. HE WAS USING THE INVESTIGATION TO GATHER EVIDENCE.**

Plaintiffs' attorney was willing to allow both Plaintiffs to speak to the investigator as long as the City Attorney's Office would sign a stipulation it would not use the testimony for impeachment purposes. Instead, Hall refused to sign the stipulation because he wanted to gather

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 8

evidence to use against the Plaintiffs, instead of actually investigating the claims. This can be discerned by his comments, "I would assume there is one truth now and one truth later, if we end up getting sued."[8] Additionally, Hall told Kelly Leerman, "He was not comfortable with such a stipulation." *See* Declaration of Kelly Leerman, pg. 3 ¶ 9. Although the Law Firm of Kamer Zucker Abbott may have been conducting the investigation, Hall had enough influence over it to not allow the Plaintiffs, the most important witnesses, to talk with the investigator. Hall intended to cause lengthy interviews to be conducted; search for minor inconsistencies; and to falsely cast such as lies. When prevented from doing so, he petulantly abdicated his duty to conduct a thorough investigation.

**VII. RULE 3.7 OF THE NEVADA RULES OF PROFESSIONAL CONDUCT HAS CLEAR APPLICATION IN THIS CASE.**

Assistant City Attorney Shipman (hereinafter "Shipman") and Deputy City Attorney Dunagan (hereinafter "Dunagan") should not be disqualified, on one basis, if the City is willing to admit what they said, thus, making their testimony moot. However, Shipman was directly involved with interviewing and calling witnesses/plaintiffs back from administrative leave. Additionally, both Shipman and Dunagan's testimony is crucial because a crux of the case is the perpetual

---

[8] Hall, with over thirty years of tenure knows what every experienced lawyer knows: whenever a witness is interviewed at length on a number of occasions there are always minor inconsistencies. Hall rejected the proposed stipulation because he intended to falsely portray those inconsistencies as lies. Additionally, contrary to opposing counsel's Response, this quote and other quotes made by Hall to the media and cited in the Motion, do not constitute hearsay because they are not being asserted for the proof of the truth of the matter asserted, but rather to illustrate Hall's constituent propensity for being disingenuous. Furthermore, if they were asserted for proof of the truth of the matter asserted, they constitute party admissions.

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 9

mishandling of the case. Even absent the testimony aspect, they should not be allowed to defend. They work for the City Attorney.

Deputy City Attorney William Cooper (hereinafter "Cooper") asserts he will be the only one handling the case. Cooper provided a Declaration in support of his statement he will be the only one on the case. Eerily missing from the Declaration is the express statement Hall will have *nothing* to do with the case. Cooper is only willing to say "…the Reno City Attorney is not personally handling each of the cases filed with his or her office." Simply because Hall might not personally be handling each case does not mean he is not associated or does not have say in each case. Without the express guarantee Hall will not have *any access or any say* in the handling of this case, the Declaration is mere posturing. Hall's history is antithetical to opposing counsel's position the Court trust that Hall will not improperly insert himself in this matter, as he has done consistently. *See* Footnote 22 in the Motion to Recuse.

## VIII. THE NEVADA RULES OF PROFESSIONAL CONDUCT HAVE AN APPLICATION IN EVERY CASE, ESPECIALLY WHEN THE RULES ARE ACTIVELY BEING VIOLATED.

As stated *supra*, opposing counsel is incorrect in his statement there is no standing to assert a challenge under Rule 1.7 of the Nevada Rules of Professional Conduct; this notion should be clear considering the case the Supreme Court ruled a non-client may bring a claim was acknowledged multiple times in the Response. The Plaintiffs acknowledge, however, Rule 1.11(d) does govern a lawyer working in a government office.

The drafters of the Nevada Rules of Professional Conduct have stressed the need for government lawyers to maintain high ethical standards:

> The rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 10

the government. The government has a legitimate need to attract qualified lawyers as well as to *maintain high ethical standards.*

*Eighth Jud. Dist. Ct.*, 321 P.3d at 886; *citing* Model Rules of Prof. Conduct R. 1.11 cmt. 4 (2012) (emphasis added). Hall has utterly failed in every instance to maintain an ethical standard, yet alone a high ethical standard. The City Attorney's Office seeks to sweep its misconduct under the proverbial rug.

Additionally, opposing counsel cites to the comment to the rule claiming it "…prudent to screen such lawyers." Model Rules of Prof. Conduct R. 1.11 cmt. 2 (2012). Screening a lawyer would generally be a sufficient course of action; however, Hall was not screened in a timely manner and oversaw major portions of the case, which has tainted the case with his misconduct. This dynamic resulted in both investigations being tampered with and limited by Hall. The phony settlement conference, which was used to intimidate instead of negotiate, is another manifestation. The period for screening a rogue lawyer has come and gone. Therefore, screening is no longer an appropriate remedy and the City Attorney's Office should be disqualified along with Hall.

//
//
//
//
//
//
//
//
//

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 11

## IX. CONCLUSION

This case involves serious misconduct of Clinger, Hall, and the City Attorney's Office. This case exists because of the decisions and actions of Hall. Hall's misconduct is sufficient to create a conflict of interest. The City Attorney's Office asks the Court to ignore all misdoings. Missing is any meaningful repudiation of serious, ethical misconduct, allegations, or an assurance of future fair dealing. Hall and the City Attorney's Office should be recused.

Dated this 4th day of December, 2017.

_____
Cody Oldham

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO RESCUSE THE RENO CITY ATTORNEY'S OFFICE - 12

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury that I am an employee of Mark Mausert, Esq.; I am over the age of eighteen (18) years; I am not a party to, nor hold an interest in this action; and on the date set below, I sent via United States Postal Service First Class Mail, **PLAINTIFF'S REPLY TO OPPOSITION TO MOTION TO RECUSE THE RENO CITY ATTORNEY'S OFFICE**, to the addressee(s) listed below:

William E. Cooper
Deputy City Attorney
PO Box 1900
Reno, NV 89505

DATED this 4th day of December, 2017.

*/s/ Brittaney Martin*
Brittaney Martin
Employee of Mark Mausert

## INDEX OF EXHIBITS

11/17/17 Declaration of Robert Miller .................................... Exhibit 1

11/27/17 Declaration of Kelly Leerman .................................... Exhibit 2

Unredacted Wall Report, pages COR 00001-00032 ................... Exhibit 3, Part I

Unredacted Wall Report, pages COR 00033-00065 ................... Exhibit 3, Part II

Unredacted Wall Report, pages COR 00066-00097 ................... Exhibit 3, Part III